# UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| **FLEET ENGINEERS, INC.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**MUDGUARD TECHNOLOGIES, LLC and TARUN N. SURTI,**<br><br>**Defendants,** | **Case No. 3:25-mc-00005**<br><br>**HON. JUDGE RICHARDSON**<br>**Magistrate Judge Frensley** |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT TARUN N. SURTI'S OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER (DOC. 43) UNDER FED. R. CIV. P. 72(a) AND CROSS-MOTION TO DISMISS FOR LACK OF A REAL PARTY IN INTEREST

Defendant Tarun N. Surti ("Mr. Surti"), appearing pro se, respectfully submits this Memorandum of Law in Support of his Objections to the Magistrate Judge's Order (Doc. 43) granting substitution of Tramec Sloan, LLC ("Tramec") for non-existent Fleet Engineers, Inc. ("Fleet") as the real party in interest in this miscellaneous enforcement action, pursuant to Federal Rule of Civil Procedure 72(a), and in support of his cross-motion to dismiss this action for lack of a real party in interest under Federal Rule of Civil Procedure 17(a).

## I.     STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 72(a), a district judge must consider timely objections to a magistrate judge's order on a non-dispositive matter and "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). A finding is "clearly erroneous" when, although there is evidence to support it, the reviewing court is left with

a definite and firm conviction that a mistake has been made. An order is "contrary to law" when it fails to apply or misapplies relevant statutes, case law, or procedural rules.

Mr. Surti further submits that the substitution ruling is not, in substance, a routine non-dispositive matter. The dispositive character of a magistrate judge's order depends on its practical effect on the litigation, not the label assigned to it. The Sixth Circuit has recognized that an order which functions to end a federal proceeding must be treated as dispositive and reviewed accordingly, regardless of how it is styled. See Vogel v. U.S. Office Products Co., 258 F.3d 509 (6th Cir. 2001). The substitution ruling here warrants the same treatment: the identity of the real party in interest is the sole issue remaining in this enforcement proceeding, and if Tramec is not entitled to be substituted for Fleet, no plaintiff remains capable of enforcing the judgment, so this action must end, a result functionally identical to dismissal. To the extent this Court agrees that the substitution ruling is outcome-determinative of this action, Mr. Surti respectfully requests that the Court apply de novo review to that ruling, in addition to or in the alternative to clear-error review under Rule 72(a).

## II.    STATEMENT OF FACTS

On March 31, 2025, counsel representing Fleet Engineers, Inc. and Tramec Sloan, LLC stated that Fleet Engineers, Inc. "no longer exists," (Case No. 3:25-cv-00122, Doc.16, PageID.192-193) yet twenty-four days later registered a judgment with the same court claiming Fleet Engineers, Inc. was alive and registered in the State of Michigan (Doc. 1-2). The same counsel listed Mr. Surti as a defendant[2] and demanded his deposition (Doc. 5-1). Before any substitution

---

[2]  Under 28 U.S.C. § 1654, individuals have the statutory right to plead and conduct their own cases personally (pro se) in all U.S. courts, including the federal district courts in Tennessee (the Eastern District of Tennessee, Middle District of Tennessee, and Western District of Tennessee).

of the judgment-holder could be granted, Mr. Surti requested that this Court require Tramec to produce evidence, such as an Asset Purchase Agreement, establishing that Fleet transferred the rights to the underlying judgment to Tramec on or around June 1, 2018. Mr. Surti in fact moved to compel production of the asset purchase agreement, schedules of transferred assets, any assignment of judgment, and proof that Fleet ever held or transferred the Michigan judgment. (Doc. 19, 40, & 41.)

The Magistrate Judge granted the substitution without addressing Mr. Surti's motion to compel and without requiring Tramec to produce any of the requested transfer documentation. (Doc. 43.) Mr. Surti respectfully submits that this was legal error requiring this Court's review and correction.

Tramec's counsel has represented under sworn statement that Fleet sold its assets to Tramec on June 1, 2018, ceased manufacturing operations, and became a non-existent entity. (Case No. 3:25-cv-00122, Docs. 15, 16.) In support, Tramec submitted Michigan State LARA filings.

Mr. Surti has raised with this Court that the underlying judgment was registered by Fleet, the plaintiff, which lacks standing or a substantive legal right to pursue enforcement because it is not the real party in interest under Fed. R. Civ. P. 17(a).

Fleet did not transfer the judgment rights between June 1, 2018 and June 1, 2025, and neither Fleet nor Tramec informed Mr. Surti or any tribunal that such a transfer had occurred. To the contrary, from 2018 to 2025 Tramec represented to Mr. Surti and to multiple tribunals, including in the related litigation at Case No. 1:12-cv-01143, that it had acquired only a majority of Fleet's shares and made Fleet a subsidiary, retaining a minority interest with Fleet's president, Wes Eklund. Mr. Eklund testified to this share-purchase characterization under oath during trial (Doc. 42-1, PageID.571). These representations were made to multiple federal tribunals, including

in filings before the Supreme Court of the United States pursuant to Supreme Court Rule 29.6 (Doc. 42-1, PageID.533).

Tramec's counsel has since described those representations as "insignificant procedural errors" that persisted for approximately seven to eight years. Mr. Surti submits that these were not innocent errors, but intentional strategic misrepresentations made to obtain a litigation advantage, and that neither Tramec nor its counsel has corrected the record before any of the tribunals to which the original representations were made. (Doc. 42.)

### III. ARGUMENT

**A. The Order Rests on a Clear Error of Fact: Mr. Surti Did Dispute the Alleged Transfer.**

The Order states that "Mr. Surti does not dispute that a transfer between the companies took place." This finding is incorrect and overlooks the record. Mr. Surti expressly disputed the alleged transfer in Doc. 19 and moved to compel production of the asset purchase agreement, schedules of transferred assets, any assignment of judgment, and proof that Fleet ever held or transferred the underlying Michigan judgment. (Doc. 40 and 41.) A motion to compel production of the very documents that would establish a transfer is direct record evidence that the transfer was disputed, not conceded. Because the Order's central factual premise is contradicted by Mr. Surti's own filings, the Order is clearly erroneous and must be set aside.

**B. The Order Is Contrary to Law Because Tramec Produced No Rule 25(c) Evidence of Any Transfer.**

Rule 25(c) permits substitution only where the moving party establishes that an interest has actually been transferred; the rule is purely procedural and does not itself confer or prove any substantive right to the underlying claim or judgment. See Hilbrands v. Far E. Trading Co., 509 F.2d 1321, 1323 (9th Cir. 1975) (Rule 25(c) is procedural only and confers no substantive rights).

4

Substitution is proper only when the moving party proves that the specific interest at issue has actually been transferred. Mere ownership of general assets or corporate succession is insufficient to establish that a specific judgment was validly assigned. Tramec produced no assignment, no asset purchase agreement, and no bill of sale. Substitution without proof of assignment is contrary to law, and the Order must be set aside on that independent basis.

Acquisition of a corporate asset does not inherently transfer rights to an active federal or state court judgment without an explicit written assignment of judgment. A judgment is a distinct legal instrument, not a general business asset, and its transfer requires a specific, written assignment identifying the judgment by case name, court, and docket number. See Restatement (Second) of Judgments § 18 (1982) (a judgment constitutes its own obligation, separate and distinct from the underlying claim); cf. U.C.C. § 9-102(a)(2) (distinguishing accounts and general intangibles from specific court-ordered obligations). Even where an asset purchase agreement purports to convey "all assets" of a business, such boilerplate language does not, as a matter of law, effect a transfer of a specific judgment absent an express assignment. Because Tramec has produced no document expressly assigning this judgment — by case number, docket entry, or otherwise — it cannot establish that it holds the substantive right to enforce the judgment that is the sole subject of this proceeding.

**C. The Order Rests on a Jurisdictional Defect: A Non-Existent Entity Cannot Hold or Transfer a Judgment.**

Mr. Surti submitted Tramec counsel's sworn statement that Fleet does not exist as a legal entity. (Doc. 42-1, PageID.515–516.) A non-existent entity cannot hold a judgment, cannot register a judgment under 28 U.S.C. § 1963, cannot transfer a judgment, cannot qualify as a real party in interest under Rule 17(a), and cannot be the source of a valid Rule 25(c) substitution. The

substitution therefore rests on a jurisdictional defect, not merely a discretionary judgment call, and the Order must be set aside on that independent basis.

**D. The Magistrate Judge Abused Discretion by Granting Substitution Without Resolving Mr. Surti's Pending Motion to Compel.**

The Magistrate Judge exercised discretion to substitute Tramec for Fleet without first requiring Tramec to produce the transfer documents Mr. Surti had moved to compel. Discretion cannot be used to grant relief that is contrary to law or unsupported by evidence in the record. Resolving the substitution question first, while leaving the motion to compel the underlying transfer documents unaddressed, put the evidentiary cart before the horse and was an abuse of discretion.

**E. Tramec's Motions for Substitution Under Rule 25(c) and Rule 17(a) Must Be Denied Based on Seven Years of Bad-Faith and Tactical Deception.**

Substitution under Federal Rule of Civil Procedure 25(c) and the real-party-in-interest inquiry under Rule 17(a) are fundamentally equitable remedies. Federal courts recognize that substitution must be denied where the moving party's conduct reflects bad faith, a lack of candor, or tactical deception rather than an honest mistake.

Tramec's seven-year history of affirmative misrepresentations forecloses equitable relief. From 2018 through 2025, across three separate tiers of the federal judiciary, including the District Court, the Court of Appeals for the Federal Circuit, and the Supreme Court of the United States, Tramec represented that it had acquired a majority of Fleet's shares, rendering Fleet a subsidiary. This corporate narrative was not an inadvertent clerical error; it was backed by the explicit, sworn trial testimony of Fleet's former president and current executive vice president, Wes Eklund. In the related litigation before the District Court (Fleet Engineers, Inc. v. Mudguard Technologies, LLC

and Tarun N. Surti, Case No. 1:12-cv-01143), Mr. Eklund testified under oath that on June 1, 2018, he "sold the majority share of business to the current majority owner, Tramec Sloan" and remained a "part owner of the business." (Doc. 42-1, PageID.571) Tramec's counsel now seeks to characterize this multi-year, multi-tribunal representation as an "insignificant procedural error." Yet despite this belated admission, Tramec has taken no formal steps to notify, correct, or amend the prior record across these federal dockets. A single omission may point to negligence; a repeated representation maintained under oath for nearly a decade is tactical, not inadvertent, and equity should not reward a party that has not corrected the record it created.

**F. Tramec's Change in Position Implicates the Doctrine of Judicial Estoppel.**

Under the doctrine of judicial estoppel, a party that successfully asserts a specific factual or legal position in one judicial proceeding is barred from asserting a clearly inconsistent position in a later phase or related proceeding. New Hampshire v. Maine, 532 U.S. 742, 749 (2001). The purpose of the doctrine is to protect the integrity of the judicial process by prohibiting litigants from "playing fast and loose with the courts." Id. Tramec and its executive, Wes Eklund, obtained the benefit of representing to multiple federal courts that Fleet operated as a stock-controlled subsidiary. Having taken that position under oath, Tramec should not now be permitted to recharacterize the transaction as a standard asset exchange for purposes of this substitution motion without the Court first resolving whether that shift is consistent with the record. Because Tramec's prior representations are inconsistent with its current position, **and because Tramec has not corrected the tribunals that received the original representations, Mr. Surti submits that Tramec's motions under Rules 25(c) and 17(a) should be denied.**

**G. Rule 17(a)(3)'s Reasonable-Time Allowance Does Not Excuse an Unexplained Multi-Year, Multi-Tribunal Inconsistency.**

7

Rule 17(a)(3) affords a plaintiff a "reasonable time" to correct a real-party-in-interest defect after objection, but that provision presupposes good-faith error, not a sustained multi-year, multi-tribunal inconsistency later characterized as procedural. A period spanning approximately seven to eight years, during which the identity of the true judgment-holder was represented inconsistently to Mr. Surti and to multiple tribunals, falls outside any reasonable-time allowance Rule 17(a)(3) contemplates absent a more complete explanation from Tramec.

Nor does an asset purchase, without more, automatically transfer enforcement rights in a specific judgment. Absent an express, executed assignment of the judgment itself, Tramec's claimed 2018 acquisition, whether of Fleet's assets or of a majority of Fleet's shares, Tramec having taken both positions at different times, does not establish that Tramec holds the substantive right to enforce this judgment.

The Magistrate Judge's Order is contrary to law because it treats this multi-year pattern of inconsistent representations as an "insignificant procedural error" without addressing whether that conduct constitutes bad faith sufficient to bar substitution.

**H. Because Tramec Is Barred from Substitution, This Action Lacks a Real Party in Interest and Should Be Resolved by Final Judgment.**

This is a miscellaneous proceeding under 28 U.S.C. § 1963 to enforce a judgment. If the only party seeking substitution is barred from that relief on equitable and evidentiary grounds, no real party in interest remains to prosecute the enforcement action. Under these circumstances, dismissal, not simply denial of substitution, is the appropriate remedy.

**The point bears emphasis: substitution is not one of several disputed issues in this proceeding, it is the only issue.** There is no separate claim, defense, or remaining question of fact or law that survives independent of whether Tramec is entitled to stand in Fleet's shoes as

judgment-holder. Once that question is resolved against Tramec, nothing remains for this Court to adjudicate. A ruling that fully disposes of every issue in a case is, by definition, a final decision within the meaning of 28 U.S.C. § 1291, and Mr. Surti accordingly requests that the Court's ruling take the form of a final, appealable judgment rather than an interlocutory order, so that this dispute over the real party in interest is conclusively resolved rather than left open for further piecemeal litigation.

**I. Fleet's Litigation History Reflects a Pattern of Resolving Disputes Through Corporate-Form Maneuvers Rather Than on the Merits.**

This is not the first time Fleet, or its successors, have used procedural posture in a manner that avoided a merits adjudication involving Mr. Surti individually. In the underlying action, this Court's June 8, 2017 summary judgment opinion rejected both of Fleet's theories that Mr. Surti's RE'755 patent was invalid, holding the patent neither indefinite nor obvious over the prior art. (Exhibit-1, ECF No. 236 at 9–17 dated 6/8/2017) Two weeks later, Fleet moved under Rule 41(a)(2) to dismiss its remaining tortious interference claim against Mr. Surti individually, without prejudice, over Mr. Surti's express opposition. (Exhibit-2, ECF No. 243 dated 6/22/2017 & Exhibit-3, ECF No. 252 at 9-14 dated 7/3/2017, Exhibit-4, Fleet.000963-000967) The Court granted that dismissal. (Exhibit-5, ECF No. 255 dated 3/30/2018)

Meanwhile, the identical tortious interference claim proceeded against co-defendant Mudguard Technologies LLC, which had been defaulted for want of counsel and never appeared to raise any defense, including the good-faith defense available to a patent holder whose patent had already been confirmed valid. **<u>The logic of that defense is straightforward: a patent holder enforcing a right later confirmed valid is engaged in privileged conduct, not tortious interference.</u>** Because Mudguard, as a defaulted non-party to the individual dismissal, never raised

that defense, it was never tested. The result was a $195,523.58 judgment entered against Mudguard by inquest under Rule 55(b)(2), without any adjudication of whether Mr. Surti's patent-enforcement notices to Fleet's customers were made in good faith. (Exhibit-3, ECF No. 255 at 4–5; Doc-1, ECF No. 256.)

The effect of that sequence was to allow Fleet's affiliated interests to obtain a money judgment on a claim closely related to patent enforcement, while avoiding a ruling on the merits defense that a validly-issued, later-confirmed patent would have supported, by dismissing the individual defendant equipped to raise that defense and proceeding instead against the defaulted corporate defendant that could not. **Mr. Surti submits that the same structural pattern recurs here, and that this history is relevant context for the Court in assessing whether the current procedural posture reflects genuine case management or a continuation of a similar dynamic.**

## IV. CONCLUSION

For the foregoing reasons, Mr. Surti respectfully requests that this Court grant the relief requested in the accompanying Motion: set aside the Magistrate Judge's Order (Doc. 43); grant Mr. Surti's Motion to Compel (Doc. 19), to the extent unresolved; deny Tramec's Motion to Substitute Parties (Doc. 14); grant Mr. Surti's cross-motion to dismiss this action for lack of a real party in interest; and enter a final, appealable judgment terminating this action pursuant to 28 U.S.C. § 1291.

Date: August 7, 2026

Respectfully Submitted

By: *TARUN N. SURTI*

_____

Tarun N Surti, *Pro Se, Defendant*
5928 Westheimer Drive
Brentwood, Tennessee 37027
Phone: 615-812-6164
email: vflaps@gmail.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on August 7, 2026, I filed the foregoing using the Court's CM/ECF system, which will serve all registered counsel of record and a copy will be served upon the lead counsel via email.

**(1). DEFENDANT TARUN SURTI'S MOTION FOR OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER (DOC. 43) UNDER FED. R. CIV. P. 72(a) AND CROSS-MOTION TO DISMISS FOR LACK OF A REAL PARTY IN INTEREST**

**(2). MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT TARUN N. SURTI'S OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER (DOC. 43) UNDER FED. R. CIV. P. 72(a) AND CROSS-MOTION TO DISMISS FOR LACK OF A REAL PARTY IN INTEREST**

W. Justin Adams, TNBPR 022433
SPENCER FANE, LLP (Counsel for Plaintiff Fleet Engineers, Inc.)
511 Union Street, Suite 1000
Nashville, Tennessee 37219-1778
615-238-6300 (Telephone)
615-238-6301 (Facsimile)
wjadams@spencerfane.com

CC: VIA EMAIL TO LEAD COUNSEL
G. Thomas Williams
McGarry Bair PC (Counsel for Plaintiff Fleet Engineers, Inc.)
5355 Northland Drive NE, Suite C, #226
Grand Rapids, MI 49525
gtw@mcgarrybair.com

*TARUN N. SURTA*

Tarun N Surti, *Pro Se, Defendant*
5928 Westheimer Drive
Brentwood, Tennessee 37027
615-812-6164 – email: vflaps@gmail.com

1