# EXHIBIT-1

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| FLEET ENGINEERS, INC., | ) | |
| Plaintiff, | ) | |
| | ) | No. 1:12-cv-1143 |
| -v- | ) | |
| | ) | Honorable Paul L. Maloney |
| TARUN SURTI and | ) | |
| MUDGUARD TECHNOLOGIES, LLC, | ) | |
| Defendants. | ) | |
| | ) | |

**OPINION AND ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Patents are complex legal documents.  In *Topliff v. Topliff,* 145 U.S. 146, 171 (1892), Justice Brown commented that "[t]he specification and claims of a patent, particularly if the invention be at all complicated, constitute one of the most difficult legal instruments to draw with accuracy[.]"  Similarly, patent litigation often presents difficult legal and technical issues. Some eighty years later, Justice White noted that some lower courts had "stated that patent litigation can present issues so complex that legal minds, without appropriate grounding in science and technology, may have difficulty in reaching decision."  *Blonder-Tongue Labs., Inc. v. Univ. of Illinois Found.*, 402 U.S. 313, 331 (1971) (citations omitted).   Further exacerbating the unique challenges that patent law poses for attorneys and judges, between 2005 and 2015, the United States Supreme Court reversed the Federal Circuit Court of Appeals' interpretation of the law in patent cases in 22 of the 27 cases accepted for review, with the trend continuing through 2017.  Steven Seidenberg, *Patent Tension The Federal*

*Circuit and the Supreme Court Continue Their Tug-of-War Over Interpretations of Patent Law*, ABA Journal, Jan. 2016 (Westlaw).

It should come as no surprise then that individuals untrained in the law, even those with scientific or technical background, face arduous challenges when forced into a patent lawsuit. Such is the case here, as Defendant Tarun Surti, whose patent is the subject of this lawsuit, proceeds without an attorney. And, as predicted by Professor John Golden, "[a] practical concern with such an option would be that, given the general complexity of patent litigation and sheer volume of written material that it can involve, pro se representation might severely compromise hopes for success." John M. Golden, *Litigation in the Middle: The Context of Patent-Infringement Injunctions*, 92 Tex. L. Rev. 2075, 2093 (2014).

This matter comes before the Court on cross motions for summary judgment. (ECF No. 185 – Fleet; ECF No. 191 – Surti.) Surti holds a reissue patent for a mud flap. Fleet Engineers makes a mud flap. Surti believes Fleet's mud flap infringes his patent. Fleet initiated this lawsuit in 2012, after Surti sent letters to Fleet's customers alleging that the Fleet mud flap infringed his patent. Since the onset of this lawsuit, Surti and his corporate entity, Mudguard Technologies, have retained two different intellectual property attorneys. Those attorneys each requested leave to withdraw, which this Court granted. Surti is now proceeding without counsel. Because Mudguard Technologies must be represented by counsel, and because no attorney filed an appearance after the first two withdrew, after several warnings, Mudguard Technologies has been defaulted. Although this Court must liberally interpret pro se filings, *see Owens v. Keeling,* 461 F.3d 763, 776 (6th Cir. 2006),

2

*Boswell v. Mayer,* 169 F.3d 384, 387 (6th Cir. 1999), the Court cannot make arguments on Surti's behalf.

I.

In Fleet's first amended complaint (ECF No. 99), it requests a declaratory judgment of non-infringement, a declaratory judgment of invalidity, and a state-law claim for tortious interference with business relationships. Surti, then represented by counsel, filed counterclaims for patent infringement, breach of contract, and misappropriation of trade secrets. (ECF No. 115.) Fleet moves for summary judgment on its own patent claims and on all of Surti's counterclaims. (ECF No. 185.) In Surti's motion, he requests the Court dismiss Fleet's invalidity claim against his patent and also that the Court find that Fleet's mud flap infringes his patent.[1] (ECF No. 191.) Both motions are fully briefed.[2] A hearing on the motions occurred on May 15, 2017.

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories and admissions, together with the affidavits, show there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a) and (c); *Payne v. Novartis Pharms. Corp.,* 767 F.3d 526, 530 (6th Cir. 2014).

---

[1] In his motion and brief, Surti does not specifically address the reasons Fleet asserts for patent invalidity. Surti does address those arguments in his response to Fleet's motion. Both of the reasons for invalidity, indefiniteness, and obviousness, are questions of law.

[2] Surti complains that Fleet's brief in response to his motion, and Fleet's reply in support of its own motion, were filed after the time period expired. Surti served his motion and his response by mail. *See* Fed. R. Civ. P. 5(b)(2)(C). At the time, the Federal Rules added three days to the time to respond when service was made by mail. *See* Fed. R. Civ. P. 6(d). For both Fleet's response and reply, the deadline, which included three additional days, occurred on a Saturday, and Fleet therefore had until the following Monday to file the relevant document. *See* Fed. R. Civ. P. 6(a)(C). Under Rule 6, both of Fleet's response and reply were timely filed.

3

The burden is on the moving party to show that no genuine issue of material fact exists, but that burden may be discharged by pointing out the absence of evidence to support the nonmoving party's case. Fed. R. Civ. P. 56(c)(1); *Holis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531, 543 (6th Cir. 2014). The facts, and the inferences drawn from them, must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (quoting *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Once the moving party has carried its burden, the nonmoving party must set forth specific facts in the record showing there is a genuine issue for trial. *Matsushita*, 475 U.S. at 574; *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 200 (6th Cir. 2010) ("After the moving party has met its burden, the burden shifts to the nonmoving party, who must present some 'specific facts showing that there is a genuine issue for trial.'") (quoting *Anderson*, 477 U.S. at 248). In resolving a motion for summary judgment, the court does not weigh the evidence and determine the truth of the matter; the court determines only if there exists a genuine issue for trial. *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (quoting *Anderson*, 477 U.S. at 249). The question is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–252.

## II.

The background for this lawsuit has been summarized in previous opinions. For context, the Court provides a brief review. Plaintiff Fleet develops, manufacturers, and sells after-market products for the trucking industry. Defendant Tarun Surti is an engineer and

the president of Defendant Mudguard Technologies.  In September 2009, Surti filed a patent application for a mud flap, which issued in April 2012, Patent No. 8,146,949.  In July 2010, Mudguard and Fleet entered into a distributor agreement for Surti's mud flap, the V-Flap. The agreement was terminated several months later.  Fleet then began to develop its own mud flap, the AeroFlap, which it introduced at a trade show in February 2012.  In June 2012, through counsel, Surti sent Fleet a letter asserting that the AeroFlap infringed Surti's patent. By September 2012, Fleet became aware that Surti had sent letters to some of Fleet's customers alleging that the AeroFlap was an infringing product.  Fleet then filed this lawsuit.

On December 10, 2013, this Court issued a Claim Construction Opinion.  (ECF No. 60.)  In that Opinion, the Court interpreted and gave meaning to four disputed phrases: (1) vertically extending; (2) vertically extending vanes defining a plurality of vertically extending channels; (3) vertically extending slotted openings in the channels of a size permitting air to pass through the openings of the rear of the flap and preventing water and debris from doing so; and (4) which permit air to pass from the channels through the flap and prevent water and debris from doing so.

On March 18, 2013, Surti filed for a reissuance of his '949 patent.  The US Patent Office reissued the patent on February 11, 2014, the RE '755 patent.  The reissued patent contains the first 17 claims from the '949 patent, and adds new claims 18 through 25.  The RE '755 patent replaces the '949 patent.  Generally, the added claims in the RE '755 patent indicate that some water and debris may pass through the slotted openings.  The added claims are consistent with this Court's Claim Construction Opinion.  Fleet filed an amended complaint to address the reissue patent, rather than the original patent.

III.

In Count 2 of their counterclaims, Defendants assert a claim for breach of contract. The counterclaim identified two separate agreements: (1) a distributor agreement dated July 20, 2010, and (2) a confidentiality and noncompete Agreement dated April 27 or 28, 2010. (ECF No. 115 Counterclaim ¶¶ 76 and 77 PageID.942.)   The distributor agreement was filed as an attachment to Fleet's initial complaint.   (ECF No. 1-1 Distributor Agreement PageID.25-31.)   Fleet filed the confidentiality and noncompete agreement as an exhibit to its motion for summary judgment.   (ECF No. 226-5 PageID.2679-80.)   The copy of the confidentiality agreement filed with the Court is not signed.   However, both parties have admitted that an agreement was reached.   (ECF No. 101 Def. Ans. to Compl. ¶ 20 PageID.848; ECF No. 116 Pl. Ans. to Counterclaim ¶ 77 PageID.948.)   Both agreements are between Fleet Engineers and Mudguard Technologies.   Surti was not a party to either contract.

Fleet is entitled to summary judgment of the counterclaim for breach of contract. Under Michigan law, the party asserting breach of contract must establish the existence of a valid contract, a breach of the contract by the other party, and damages resulting from the breach. *Miller-Davis Co. v. Ahrens Constr., Inc.*, 848 N.W.2d 95, 104 (Mich. 2014).   Fleet has established that the two agreements identified in the counterclaim were between Fleet and Mudguard.   Surti has not established that he had any valid contract with Fleet, an essential element of his counterclaim.   And, because Surti did not have any contract with Fleet, Fleet could not breach a contract with Surti.   Additionally, Mudguard Technologies has been defaulted and cannot maintain its counterclaim.

IV.

In Count 3 of their counterclaims, Defendants assert a claim for misappropriation of trade secrets.  Defendants describe their trade secrets as including

> supplier lists, customer lists, know-how, manufacturing techniques, process flow charts with process controls documented, control plans with critical characteristics identified, multi-faceted product design and process failure mode and effect analysis, and process set-up and operation procedures and controls.

(ECF No. 115 Counterclaims ¶ 82 PageID.943.)   Defendants claim that Fleet misappropriated these secrets and used them to develop products that compete with Defendants' products.  (*Id.* ¶ 87 PageID.943.)

Michigan has adopted the Uniform Trade Secrets Act, Michigan Compiled Laws §§ 445.1901, *et seq.*  The statute defines "misappropriation" as "either of the following:"

> (i) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means.

> (ii) Disclosure or use of a trade secret of another without express or implied consent by a person who did 1 or more of the following:

> (A) Used improper means to acquire knowledge of the trade secret.

> (B) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was derived from or through a person who had utilized improper means to acquire it, acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or derived from or through a person who owed a duty to the person to maintain its secrecy or limit its use.

> (C) Before a material change of his or her position, know or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

Mich. Comp. Laws § 445.1902(b).  "Trade secret" is defined as

7

information, including a formula, pattern, compilation, program, device, method, technique, or process, that is both of the following:

(i) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

(ii) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

*Id.* § 445.1902(d). For the misappropriation of trade secrets, a claimant must prove (1) the existence of a trade secret, (2) the defendant's acquisition of the trade secret in confidence, and (3) the defendant's unauthorized use of the trade secret. *Polytorx, LLC v. Univ. of Michigan Regents*, No. 318151 and 320989, 2015 WL 2144800, at *6 (Mich. Ct. App. May 7, 2015) (per curiam unpublished opinion) (citing *Stromback v. New Line Cinema*, 384 F.3d 283, 302 (6th Cir. 2004)).

Fleet is entitled to summary judgment on the misappropriation of trade secrets counterclaim. First, Surti cannot raise a misappropriation claim on behalf of Mudguard Technologies. Assuming, for the sake of argument only, that Mudguard Technologies has a viable claim, the entity has been defaulted and cannot maintain the counterclaim. Second, Surti's response generally fails to identify, with sufficient specificity, which of his trade secrets were misappropriated. The Sixth Circuit has stated that "Michigan courts have found that an alleged trade secret must by identified 'clearly, unambiguously, and with specificity.'" *Utilase, Inc. v. Williamson*, 188 F.3d 510, 1999 WL 717969, at *6 (6th Cir. Sept. 10, 1999) (unpublished table opinion) (citation omitted). In his response, Surti asserts that he owns the "IP related trade secrets." (ECF No. 199 PageID.2420.) Surti asserts that both he and

8

Mudguard jointly own the "manufacturing and marketing related trade secrets." (*Id.*)  These broad descriptions of a potential trade secret fail to provide the required detail and specificity.

Third, Surti cannot base his misappropriation claim on his patent.  As part of his response, Surti argues that the incorporation of vanes, channels and slotted openings into Fleet's Aeroflap is clear proof of a misappropriation of his trade secret.  But, the design of Surti's mud flap is not a secret; the patent is publically recorded and the mud flap itself is offered for sale.  *See Kewanee Oil Co. v. Bicron Corp.,* 416 U.S. 470, 475 (1974) ("The subject of a trade secret must be secret, and must not be of public knowledge or of a general knowledge in the trade or business.").  Trade secret law "does not offer protection against discovery by fair and honest means, such as by independent invention, accidental disclosure, or by so-called reverse engineering, that is by starting with the known product and working backwards to divine the process which aided in its development or manufacture." *Id.* at 476.  Even if Fleet has manufactured a mud flap that resembles Surti's patent, that evidence does not create a genuine issue of material fact for Surti's misappropriation of trade secrets claim.

V.

In Count 2 of its complaint, Fleet requests a declaration that Surti's patent is invalid. Fleet argues the reissue patent is invalid for two reasons, indefiniteness and obviousness. Surti perfunctorily requests the Court grant summary judgment and find that his patent is valid.

A.

Fleet argues Surti's patent is invalid because it contains inherently contradictory terms as part of its claims.

9

Patent indefiniteness is a question of law. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1341 (Fed. Cir. 2015). Patent definiteness is required by statute, 35 U.S.C. § 112. In *Nautilus*, the United States Supreme Court clarified the standard for evaluating definiteness. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014).

> A patent is indefinite "if its claims, read in the light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable clarity, those skilled in the art about the scope of the invention." *Nautilus* [], 134 S.Ct. at 2124. The definiteness requirement must take into account the inherent limitations of language. "Some modicum of uncertainty . . . is the 'price for ensuring the appropriate incentives for innovation.'" *Id.* at 2128 (quoting *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 732 (2002)). On the other hand, "a patent must be precise enough to afford clear notice of what is claimed, thereby appris[ing] the public of what is still open to them." *Id.* at 2129 (internal quotation marks and citations omitted).

*Teva Pharm.*, 789 F.3d at 1340–41 (alterations in original). "The definitiveness requirement . . . mandates clarity, while recognizing that absolute precision is unattainable." *Nautilus*, 134 S. Ct. at 2129. A claim does not satisfy the statutory requirement for definitiveness "if its language 'might mean several different things and no informed or confident choice is available among the contending definitions.'" *Media Rights Techs., Inc. v. Capital One Fin. Corp.*, 800 F.3d 1366, 1371 (Fed. Cir. 2015) (citing *Nautilis*, 134 S. Ct. at 2130 n.8).

Fleet argues that RE '755 contains contradictory language and concludes that the patent is therefore invalid for indefiniteness. Specifically, Fleet argues that, in Claims 1 and 2, the mud flap is described as allowing air is allowed to pass through openings in the mud flap, but water and debris are prevented from doing so. In Claim 18, the mud flap is described as allowing air to pass through openings, while a majority of the water and debris are prevented from doing so. Finally, in Claim 25, the mud flap is described as allowing air

to pass through the openings, while substantially preventing water and debris from doing so. Fleet asserts the patent is indefinite because it claims to (1) prevent water and debris from passing through openings, (2) prevent a majority of water and debris from passing through openings, and also (3) substantially prevent water and debris from passing through openings. Alternatively, Fleet argues the patent is indefinite because it fails to quantify how much water and debris could pass through the openings.

Fleet has not established that the patent is indefinite.  First, Fleet's argument here ignores what the Court has already determined.  This Court has twice rejected Fleet's assertion that the word "prevent" in the claim section of the patent means that absolutely no water or debris may pass through the slotted opening.  In the claim construction phase, Fleet asserted that the words "prevent" and "preventing" in the claim required the mud flap to stop all water from passing through the openings.  The Court rejected that interpretation. Notably, the Court pointed to the specification, which "explicitly anticipates that some water and debris may pass through the slotted openings."  (Claim Construction Opinion at 13 PageID.398.)  Thus, the words "prevent" or "preventing," as used in the claim, do not require the mud flap to stop all water and debris from passing through the slotted openings.  The Court also denied Fleet's motion for reconsideration on the issue.  (ECF No. 71.)

Second, adding the word "substantially" to modify the word "preventing" in patent the claim does not necessarily render the patent indefinite.  "Expressions such as 'substantially' are used in patent documents when warranted by the nature of the invention, in order to accommodate the minor variations that may be appropriate to secure the invention." *Verve, LLC v. Crane Cams, Inc.*, 311 F.3d 1116, 1120 (Fed Cir. 2002).  Words

of degree or approximation, like "substantially" are "ubiquitous in patent claims" and "have been accepted in patent examination and upheld by the courts." *Andrew Corp. v. Gabriel Elecs., Inc.*, 847 F.2d 819, 821 (Fed. Cir. 1988); *e.g., Rosemount, Inc. v. Beckman Instruments, Inc.*, 727 F.2d 1540, 1546–47 (Fed. Cir. 1984) ("Beckman attacks the claims as indefinite, primarily because 'close proximity' is not specifically or precisely defined. As stated in the district court's Memorandum Decision, 'to accept Beckman's contention would turn the construct of a patent into a mere semantic quibble that serves no useful purpose.'") (citation omitted). Words like "substantially" are "descriptive terms commonly used in patent claims to 'avoid a strict numerical boundary to the specified parameter.'" *Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1367 (Fed. Cir. 2001).

Third, the Court notes that a similar argument was raised in another patent case, and also rejected. In *Brandt Industries, Limited v. Harvest International Corporation*, No. C15-4049-LTS, 2016 WL 1452402 (N.D. Iowa, Apr. 13, 2016), the district court issued an opinion interpreting a patent for a belt-guide attachment for a conveyer belt used in farming equipment. The invention prevented a rotating belt from moving side to side and rubbing against parts of the machine. The defendant noted that claim 1 in the patent used the phrase "to prevent," while claim 10 in the patent used the phrase "to substantially prevent." *Id.* at *17. The defendant argued that there must be some difference between the two phrases and asserted that the former phrase, without the word "substantially," must mean "absolutely prevent." *Id.* The defendant argues that without the distinction, the claims would be rendered indefinite. The court rejected the defendant's construction. Reviewing Federal Circuit opinions, the court concluded that where a patent does not provide a standard for

imposing a precise construction for the term, it is error for a court to do so. *Id.* at *18 (citations omitted). The same reasoning applies here, as Surti's patent does not provide a standard for measuring how much water may pass through the slotted openings.

Finally, Plaintiff argues the claim does not quantify how much water is allowed to pass through the slotted openings. This argument is not persuasive. Plaintiff cannot point to any portion of the claim language that would suggest or infer that a measured quantity is necessary to the invention. *See, e.g., Polymer Indus. Prods. Co. v. BridgestoneFirestone, Inc.,* 10 F. App'x 812, 818 (Fed. Cir. 2001) ("Since the claim language makes no attempt to quantify the reduction in adhesion, quantification of the amount of cord that projects above the rubber surface of the bladder is not required, either for infringement of validity analysis."). The Court will not conclude the patent is indefinite for a reason not supported by the claim language. And, it would be an error for this Court to impose a standard for quantifying the amount of water allowed to pass through the slotted openings.[3] *See Brandt Indus.,* 2016 WL 1452402, at *18.

Because indefiniteness is a question of law, and because this Court concludes Surti's patent is not indefinite for the reasons identified by Fleet, the Court will dismiss Fleet's claim for invalidity based on indefiniteness.

---

[3] Surti's response to this argument is one example of where his lack of legal background creates problems. Surti summarizes the dimensions of the slotted openings and discusses the surface area of his mud flap, comparing the area of material to the area of the openings. Surti's discussion is not responsive to Fleet's argument. The Court may, however, reject Fleet's argument because its premise is inconsistent with this Court's earlier opinion and because the legal conclusion Fleet proposes is not warranted by the language of the patent.

13

B.

Fleet argues Surti's patent is invalid because the invention was obvious under the prior art.

Patent invalidity for obviousness is a legal determination. *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 427 (2007) (citing *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966)). The factual determinations underlying an obviousness determination are reviewed for clear error. *Proctor & Gamble Co. v. Teva Pharm. USA, Inc.*, 566 F.3d 989, 993 (Fed. Cir. 2009).

Under the Patent Act, a patent "may not be obtained, . . . , if the differences between the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains." 35 U.S.C. § 103. "A party seeking to invalidate a patent based on obviousness must demonstrate 'by clear and convincing evidence that a skilled artisan would have been motivated to combine the teaching of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success in doing so.'" *Proctor & Gamble*, 566 F.3d at 994 (citation omitted). Obviousness of a patent requires the court to consider four factual inquiries: (1) the scope and content of the prior art, (2) differences between claims and prior art, and (3) the level of ordinary skill in pertinent art, and (4) objective indicia of non-obviousness, also called secondary considerations. *Id.* (citing *Graham*, 383 U.S. at 17). Here, the parties do not address the secondary considerations.

14

For Fleet's obviousness argument, it makes the assumption that the vanes in Surti's patent do not protrude from the front face of the mud flap.[4] Fleet argues that if the vanes do not protrude, then the prior art, the Andersen Patent No. '717 (ECF No. 28-1), anticipated the invention. Fleet argues that the strands in the Andersen patent and the vanes in the Surti patent are the same.

Surti argues that the critical feature of his invention is the creation of a channel. In Surti's patent, a channel is created between the vanes by adding a rear wall. The slotted openings in Surti's patent are smaller than the space between the vanes on either side of the channel. The Andersen patent lacks the rear wall and thus no channel is created. The openings in the Andersen patent are the entire space between the vanes or strands.

Fleet is not entitled to summary judgment on its claim that Surti's patent is invalid for obviousness.

The Court first considers the prior art. For Fleet's obviousness claim, two prior patents must be described, the Nakayama '318 patent and the Andersen '717 patent.

The Nakayama '318 patent issued in 1993. (ECF No. 23-2.) The Nakayama mud flap was made from two pieces, a front member with openings and a back member which collects the water that passes through the openings. The patent describes how the front member or panel would be attached to the back member, with space or a membrane between the two. The front panel is described in various embodiments and in various configurations. In Claim 1, the front panel is described as "being comprised of a plurality of horizontally

---

[4] Fleet advances arguments in the alternative. For the obviousness argument, Fleet assumes that the vanes do not protrude. For its non-infringement argument, Fleet assumes that the vanes do protrude.

spaced vertically extending members and vertically spaced laterally extending members interconnected with the vertically extending members to form a network and the openings are spaces defined by the network." (ECF No. 23-2 Col. 6 Lines 65–68 – Col. 7 Lines 1-2 PageID.212–13.) Basically, the front panel is a grid of vertical and horizontal ribs, with openings between the parallel ribs. The water passes through the front panel and is caught by the back panel.

The Andersen '717 patent issued in 2005. (ECF No. 28-1.) The Andersen mud flap is a mesh panel of "strands" that run either horizontally or vertically. The plurality of strands are held together by several strands that run perpendicular, either horizontally or vertically, to the plurality. The strands have spaces between them forming openings through which air could pass while a majority of the water and debris is deflected by the front surface of the strands. The patent contains several embodiments of the invention. For several of the embodiments, the strands are described as having sides that are perpendicular or parallel to the axes. Other embodiments describe one or both of the sides of the strands having an 80 degree angle. Unlike the Nakayama patent, the Andersen patent is a single flap or panel or member.

The differences between the Nakayama and Andersen patents and Surti's patent are material, and a person ordinarily skilled in the pertinent art would not conclude that Surti's mud flap was obvious under the prior art. Surti's patented invention is different from the prior art because of the rear wall, which, in combination with the sides of the vanes, forms a channel. In both the Nakayama and the Andersen patent, the gap between the ribs (members for Nakayama and strands for Andersen) creates the openings. The openings

16

begin where the side of each rib ends.  In Surti's patent, the ribs (vanes) form the two sides of a channel.  The bottom of the channel is formed by a rear wall.  The slotted openings are narrower than the width of the channel formed by the vanes.  The Andersen patent lacks a rear wall to form a channel.  The rear wall in the Nakayama patent is a separate piece and does not have any slotted openings.

Fleet's reasoning ignores how the openings are formed in the Andersen patent, as opposed to the Surti patent.  Fleet is correct that the openings can be narrowed in the Andersen patent.  By changing the angle of the side or sides of each strand or the space between the strands, the slotted openings can be narrowed.  But, changing the angle of the side of the strand does not create a channel.  The sides of Surti's vanes, in combination with the rear wall, create a channel.  A person of ordinary skill in the prior art, considering the Andersen patent, would not consider the addition of a rear wall as obvious.

Because obviousness under the prior art is a question of law, and because this Court concludes Surti's patent is not obvious under the prior art, the Court will dismiss Fleet's claim for invalidity for obviousness.  Taking the evidence in the record in the light most favorable to Fleet, the Court concludes there are no genuine issues of material fact relevant to Fleet's obviousness argument.

## VI.

In Count 1, Fleet requests a declaration of non-infringement.  In its motion, Fleet requests summary judgment on its claim for non-infringement.  In Count 1 of his counterclaims, Surti asserts that Fleet's Aeroflap infringes on his patent.  In his motion, Surti requests summary judgment on his infringement counterclaim.

17

Infringement determinations entail a two-step process. "'First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process.'" *Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1129 (Fed. Cir. 2011). The first step, claim construction, is a question of law, while the second step, the determination of whether the properly construed claims read on the accused device, is a question of fact. *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1326 (Fed. Cir. 2006); *Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336, 1341 (Fed. Cir. 2001) (citations omitted). When the alleged infringer files a motion for summary judgment for non-infringement, summary judgment may be granted where the patent holder's proof does not create a genuine issue of material to satisfy the legal standard for infringement. *London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1538 (Fed. Cir. 1991).

To prove infringement, the patent holder must show that the accused product uses each element of a claim, either literally or under the doctrine of equivalents. *Cheese Sys. Inc. v. Tetra Pak Cheese and Powder Sys., Inc.*, 725 F.3d 1341, 1348 (Fed. Cir. 2013). For literal infringement, the claimant must show that every limitation set forth in a claim is "found in an accused product, exactly." *Microsoft Corp. v. GeoTag, Inc.*, 817 F.3d 1305, 1313 (Fed. Cir. 2016) (quoting *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995)); *see Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 881 F.3d 1334, 1341 (Fed. Cir. 2016) ("Literal infringement exists when every limitation recited in the claim is found in the accused device."). For infringement under the doctrine of equivalents, the claimant must show the accused device includes an equivalent for each literally absent claim limitation.

18

*Dawn Equip. Co. v. Kentucky Farms Inc.*, 140 F.3d 1009, 1015 (Fed. Cir. 1998).   The Federal Circuit has outlined two methods by which a court may apply the test for equivalence. *Voda v. Cordis Corp.*, 536 F.3d 1311, 1326 (Fed. Cir. 2008).   "Under the insubstantial differences test, '[a]n element in the accused device is equivalent to a claim limitation only if the differences between the two are insubstantial.'"   *Id.* (quoting *Honeywell Int'l Inc. v. Hamilton Sundstrad Corp.*, 370 F.3d 1131, 1139 (Fed. Cir. 2004)).   Whether the differences are substantial or insubstantial are determined from the perspective of one of ordinary skill in the art.   *Eagle Comtronics, Inc. v. Arrow Commc'n Labs., Inc.*, 305 F.3d 1303, 1315 (Fed. Cir. 2002).   "Alternatively, under the function-way-result test, an element in the accused device is equivalent to a claim limitation if it 'performs substantially the same function in the substantially the same way to obtain substantially the same result.'"   *Voda*, 536 F.3d at 1326 (quoting *Schoeil v. Regal Marine Indus., Inc.*, 247 F.3d 1202, 1209-10 (Fed. Cir. 2001)).

For its non-infringement claim, Fleet assumes that Surti's invention requires vanes that protrude from the face of the mud flap.   Fleet argues that its mud flap does not have any vanes.   Fleet filed an expert report to support its claim for non-infringement.   (ECF No. 189-1 Thomas Young Report PageID.1997-2004.)   Fleet's expert, Thomas Young, states that one of the reasons Fleet's mud flap does not infringe on Surti's patent is because the Fleet mud flap does not have any vanes.   (*Id.* PageID.2002.)   Instead, the Fleet mud flap has a flat surface area with depressions.   (*Id.*)

Based on the arguments presented in the motion and briefs, Fleet is entitled to summary judgment on its claim for non-infringement.   Surti's cross-motion for summary judgment for infringement must be denied.   For the purpose of Fleet's motion, the facts must

19

be viewed in the light most favorable to Surti. For Surti's motion, the facts must be viewed in the light most favorable to Fleet. Generally, this Court finds there are no disputed issues of fact.

Fleet's mud flap does not infringe Surti's patent because Fleet's mud flap does not have vanes. A vane is a critical and defining element of Surti's patent. The word "vane" is used throughout the claims in Surti's patent. The sides of the vanes define and create the channels, another critical and defining element of the patent.

Some context is necessary at this point. The record contains some discussion by Fleet about what the word "vane" means, but little discussion of the meaning of the word by Surti. The problem started with the Joint Comprehensive Statement of Claim Construction Issues, a document filed on behalf of both parties in April 2013. (ECF No. 19.) In that document, the word "vane" was not identified as a disputed term. In its claim construction brief, Fleet, for the first time, raised arguments about what a vane is. Fleet argued that a vane must protrude outwardly, a characteristic or description rather than a definition. (ECF No. 28 PageID.268.) Fleet asked the Court to construe the word "vane" as "something that protrudes beyond the body of the mud flap." (*Id.* at PageID.281.) Surti objected to this construction, arguing in part that Fleet had not previously indicated that it intended to ask for a construction of the term. (ECF No. 35 at 4 PageID.323.) The Court agreed that Fleet's request to construe the term was not timely. (Claim Construction Opinion at 12 PageID.397.) The Court also noted, as dicta, that Fleet's argument relied on a description of an embodiment of the mud flap, which should not be read as imposing a limitation on the

claim.  (*Id.*)  When the meaning of the term "vane" has resurfaced, Surti has repeatedly relied on the Court's Claim Construction Opinion.[5]

Fleet requested the Court reconsider the decision not to construe the word "vane." (ECF No. 66.)  For the first time, Fleet offered a definition of the word "vane" as a blade, plate or sail usually attached radially to a rotating wheel or drum.[6]  (*Id.* at 7 PageID.440.) Fleet argued that it would not be possible to have a vane that did not protrude from the front side of the mud flap.  (*Id.* at 8 PageID.441.)  In declining to reconsider the Claim Construction Opinion, the Court conceded that, "[t]o the extent the issue may affect later stage of the case, the issue may be dealt with at that later stage."  (ECF No. 71 Order at 4 PageID.454.)

For the purpose of the cross motions, the term "vane" must be now be defined.  Fleet has again raised the issue.  And, the first step in the process for determining infringement requires a court to construe terms.  At no point in this litigation has Surti offered a definition or a construction of the term "vane."  Generally, a "vane" is a relatively thin, rigid structure, like a blade, that is attached to another structure or surface.[7]  In Surti's mud flap, the vanes are attached to the rear wall, and the combination of vanes and rear wall form the channels. This definition of "vane" is consistent with the ordinary and custom meaning of the word as it is understood by a person of ordinary skill in the art.  *See Phillips v. AWH Corp.*, 415

---

[5] (*E.g.,* ECF No. 192 Surti's brief in support PageID.2024-25 and 2029; ECF No. 199 Surti's response to Fleet's motion PageID.2409.)

[6] Fleet offered a similar definition of "vane" in its response to Surti's motion for summary judgment. (ECF No. 201 at 12 n.7 PageID.2502.)

[7] *See Vane,* Webster's New Universal Unabridged Dictionary (2d 2003); *Vane*, American Heritage Dictionary (3d Ed. 1996); *see also* Collins Dictionary (online visited June 5, 2017); The Free Dictionary (online visited June 5, 2017); Oxford English Dictionary( online visited June 5, 2017).

F.3d 1303, 1312 (Fed. Cir. 2005).  This meaning is entirely consistent with the intrinsic evidence in the record concerning the patent.  And, nothing in the patent suggests the author intended the term means something else.  Weighing in favor of concluding that the term "vane" has an ordinary and well-understood meaning, the patent contains very little description of the vanes.[8]

Construing the term in this manner, Fleet is correct that a vane must protrude or rise from the rear wall of the mud flap.  That the vane protrudes describes the orientation of the vane relative to a surface, the rear wall; that the vane protrudes does not define what the vane is.  Accordingly, construing a vane as a thin, rigid structure like a blade and describing the vane as protruding from the rear wall does not read a requirement into the claim from the description of the embodiment.[9]  It is the nature of a vane to protrude from the surface to which it is attached.

Without dispute, Surti's mud flap has vanes.  The claim language requires the mud flap to have vanes.  The description in the embodiment states that the vanes "extend . . . from the front side of the panel[.]"  (Col. 2 Lines 40-41 PageID.2744.)  Figures 2-6 (PageID.2740), Figure 8 (PageID.2742), and Figures 10-13 (PageID.2743) all show a vane, a thin structure that rises, extends or protrudes from the rear wall on the front side of the

---

[8] Claim 24 in the Reissue Patent (Col. 6 Lines 41-45 PageID.2746) contains the same general description as the embodiment (Col. 2 Lines 38-44 PageID.2744).  The distance between the vane peaks and the height of the vanes are described.  In the description of the embodiment, the patent states that "it will be understood vanes can have any degree of taper and height that will funnel the air, water, and debris into the channels[.]"  (*Id.*)

[9] To the extent this conclusion is at odds with what the Court concluded in the Claim Construction Opinion, the Court retains inherent discretion to reconsider any previous finding before final entry of judgment.  *See In re Saffady*, 524 F.3d 799, 803 (6th Cir. 2008) (quoting *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991)).

mud flap.   The parties also provided the Court with examples of both mud flaps. Acknowledging that it is an oversimplification, Surti's mud flap contains a series of structures that look very much like wiper blades for the windshield of a car (vanes), which are all attached to a flat panel (rear wall) creating channels.  The rear wall panel contains slots that are narrower in width than the space between the blades or vanes.

Without dispute, Fleet's mud flap contains no thin, blade-like structures.   The absence of any of vane-like structures means that Fleet's mud flap does not literally infringe on Surti's patent.  The front surface (and back surface) of Fleet's mud flap is flat.  Rather than having vanes rising, extending or protruding from some surface, Fleet's mud flap forms channels, of a sort, by creating depressions in the flat surface of its mud flap.  By forming channels through depressions, Fleet's mud flap does not have a surface to which any vane-like structures are attached.

Fleet's mud flap does not infringe Surti's patent under the doctrine of equivalents. Fleet's mud flap does not include a structure that, under the doctrine of equivalents, could be considered a vane.  When compared side-by-side, the cross sections of the two mud flaps are substantially different.  (ECF No. 199 Surti's Response PageID.2410.)  No relatively thin, blade-like structure is apparent in the cross section of Fleet's mud flap.  Fleet's mud flap does not contain any structures that protrude from a surface, reinforcing the conclusion that the mud flap does not have any vanes.   And, without vanes, Fleet's mud flap cannot have channels.

The depressions in Fleet's mud flap do not perform the same function as the channels in Surti's mud flap.  Although the depressions may trap water and debris, the depressions do

not prevent, substantially prevent, or prevent a majority of the water and debris collected in them from passing through the slotted openings. Unlike Surti's mud flap, where the channel allows the water and debris to flow down the face of the mud flap, Fleet's depressions trap the water and debris. Fleet has further established that its mud flap does not prevent, substantially prevent, or prevent a majority of the water and debris from passing through the slotted openings in its mud flap. (ECF No. 203 Reply at 6-8 PageID.2517–19.)

Fleet's mud flap does not infringe on Surti's patent for another reason. To the extent Fleet's mud flap contains any vanes, channels or slotted openings, those structures are not vertical. Claims 1, 5, 9, and 13 all require the structures to be "vertically extending." This Court interpreted the word "vertically" to mean perpendicular to the road surface. (Claim Construction Opinion at 10-11 PageID.395–96.) The majority of the structures on Fleet's mud flap are at a 45 degree angle; they are not vertical or perpendicular to the surface of the road. Because the structures are at a 45 degree angle, the structures do not prevent water and debris from being deflected to the sides of the mud flap. To the extent the structures do direct water and debris at all, the water and debris would be pushed to the sides of the mud flap, and not toward the bottom of the mud flap.

VII.

On the record before the Court, Fleet is entitled to summary judgment on all but its claims that Surti's patent, RE '755, is invalid. Fleet has established that Surti does not have a breach of contract counterclaim, as he never had a contract with Fleet. Fleet has demonstrated that Surti cannot maintain a misappropriation of trade secrets counterclaim because his patent cannot provide the basis for a trade secret. Fleet has also correctly stated

the law that Surti cannot bring either counterclaim on behalf of his corporation, Mudguard Technologies. Default has entered against the corporate entity. Finally, Fleet has established that its mud flap does not infringe Surti's patent, literally or under the doctrine of equivalents. Fleet's mud flap does not contain any vanes, a critical component of Surit's patent. Fleet, however, has not demonstrated that Surti's patent is invalid, either for indefiniteness or obviousness.

On the same record, Surti's is entitled to summary judgment on Fleet's claims that his patent, RE '755, is invalid. The claims in Surti's patent are not indefinite for any of the reasons advanced in Fleet's motion. And, the patent is not obvious under the prior art. Surti has not, however, established that Fleet's mud flap infringes his patent. During this litigation, Surti has never asked the Court to define or otherwise construe the word "vane," a term used throughout the claims in his patent. Fleet, on the other hand, has raised the issue on multiple occasions. While the Court declined Fleet's initial attempt to construe the term, Fleet's latest motion requires the Court to define or construe what the word "vane" means in the patent. And, as defined or construed, Fleet's mud flap does not include any structure resembling a vane.

## ORDER

For the reasons provided in the accompanying Opinion, (1) Fleet Engineering's Motion for Summary Judgment (ECF No. 185) is **GRANTED IN PART and DENIED IN PART**, and (2) Tarun Surti's Motion for Summary Judgment (ECF No. 191) is **GRANTED IN PART and DENIED IN PART.**   Fleet is entitled to summary judgment on its request for a declaration that its mud flap, the AeroFlap, does not infringe on Surti's patent, RE '755. Fleet is also entitled to dismissal of Surti's counterclaims for breach of contract and misappropriation of trade secrets.   Surti is entitled to the dismissal of Fleet's claims that his patent is invalid.

**IT IS SO ORDERED.**

Date:   June 8, 2017                                    /s/ Paul L. Maloney
                                                      Paul L. Maloney
                                                      United States District Judge

26

# EXHIBIT-2

### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF MICHIGAN

**FLEET ENGINEERS, INC.**
  a Michigan Corporation,

  Plaintiff

v.

**MUDGUARD TECHNOLOGIES, LLC**
  a Tennessee limited liability company,
**TARUN SURTI**
  an Individual,

  Defendant.

Case No. 1:12-CV-1143

Hon. Paul L. Maloney

---

### FLEET ENGINEERS, INC.'S MOTION FOR DISMISSAL OF COUNT III AS TO DEFENDANT SURTI PURSUANT TO FED. R. CIV. P. 41(a)(2)

Plaintiff Fleet Engineers, Inc. ("Fleet"), by and through its undersigned counsel, hereby submits its Motion for Dismissal of Count III as Defendant Tarun Surti ("Mr. Surti"), pursuant to Federal Rule of Civil Procedure 41(a)(2). In support of this request, Fleet states as follows:

1. On October 15, 2015, Plaintiff filed a First Amended Complaint with three counts: (1) Declaratory Judgment on Non-Infringement 28 U.S.C. § 2201; (2) Declaratory Judgment of Invalidity under 35 U.S.C. § 102 and 103(b); and (3) Tortious Interference with Business Relations under Michigan law. Doc #99.

2. On November 6, 2014, Defendant Tarun Surti filed an Answer to the First Amended Complaint. Doc #101.

3. Count III of the Amended Complaint as to Defendant Tarun Surti is the only remaining triable claim remaining in this matter following this Court's rulings on the Motions for Summary Judgment and the status of Defendant Mudguard in default.

1

4.      As Defendant Mudguard remains in default on Count III of the Amended Complaint, Plaintiff's efforts to prosecute this claim have been frustrated. In addition, trying this claim as to Defendant Surti will be a waste of this Court's judicial resources when a necessary party to the claim (Defendant Mudguard) is in default. Further, it is anticipated that Defendant Surti will defend against this claim by stating that he was acting in his corporate capacity as an officer of Defendant Mudguard.  At this point in the proceedings, these issues are best left to another day when both Defendants can appear.

5.      Pursuant to Fed. R. Civ. P. 41(a)(2), Plaintiff requests that Count III of the Amended Complaint as directed to Defendant Tarun Surti be dismissed without prejudice and without costs to either party.

> ***This Rule is intended to allow for the liberal dismissal of claims, even after a counter-claim is filed***, subject to the court approval to determine that no party is prejudiced thereby. *See Johnson v. Pharmacia & Upjohn Co.,* 192 F.R.D. 226, 228 (W.D.Mich.1999) (quoting *Templeton v. Nedlloyd Lines,* 901 F.2d 1273, 1274 (5th Cir.1990) (*per curiam* )). Whether to grant dismissal under Rule 41(a)(2) is a matter left to the district court's discretion. *See Garner v. Missouri–Pacific Lines,* 409 F.2d 6, 7 (6th Cir.1969). ***However, "a district court should [ordinarily] grant a motion for voluntary dismissal unless a defendant can show that it will suffer some plain legal prejudice as a result."*** *Waller v. Financial Corp. of America,* 828 F.2d 579, 583 (9th Cir.1987). "Plain legal prejudice" does not result simply because the defendant faces the prospect of defending a second lawsuit, *see, e.g., Grover by Grover v. Eli Lilly & Co.,* 33 F.3d 716, 718 (6th Cir.1994), nor does it result simply because the plaintiff may gain some tactical advantage in a future lawsuit, *see, e.g., Davis v. USX Corp.,* 819 F.2d 1270, 1275 (4th Cir.1987).

*Performance Abatement Servs., Inc. v. Lansing Bd. of Water & Light*, 168 F. Supp. 2d 720, 731 (W.D. Mich. 2001) (emphasis added).

6.      Pursuant to Local Rule 7.1(d), counsel for Plaintiff attempted to reach Defendant Surti on June 21, 2017, by email to determine if he would enter into a stipulation regarding

dismissal of this claim; Defendant Surti has not responded. ***See, Exhibit A.*** Counsel for Plaintiff also attempted to reach Defendant Surti by telephone on June 22, 2017, however Defendant Surti has not replied to Plaintiff's call.

Respectfully submitted,

Dated:    June 22, 2017

By:    */G. Thomas Williams/*

G. Thomas Williams (P53734)
*Attorneys for Plaintiff Fleet Engineers, Inc.*
**MCGARRY BAIR PC**
45 Market Ave. SW, Suite 700
Grand Rapids, MI 49503
Tel: (616) 742-3500
Fax: (616) 742-1010
Email: gtw@mcgarrybair.com

g1133299.docx

3

# EXHIBIT-3

FILED - KZ
July 3, 2017 11:54 AM

U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
__jlb__ Scanned by _____ / __ / __

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

FLEET ENGINEERS, INC.
    a Michigan Corporation,

    Plaintiff

v.

MUDGUARD TECHNOLOGIES, LLC
    a Tennessee limited liability company,
TARUN SURTI
    an Individual,

    Defendant.

Case No. 1:12-CV-1143

Hon. Paul L. Maloney

---

## DEFENDANTS' MOTION TO DENY PLAINTIFF'S RENEWED MOTION & BRIEF

## REQUEUSTING ENTRY OF JUDGMENT PURSUANT TO FED. R. CIV. P. 54

1. On June 8, 2017, this Court issued its Opinion and Order Granting in Part Plaintiff's Motion for Summary Judgment and Granting in Part Defendant's Motion for Summary Judgment. ECF No. 236

2. In its Order, this Court held that:

*"For the reasons provided in the accompanying Opinion, (1) Fleet Engineering's Motion for Summary Judgment (ECF No. 185) is **GRANTED IN PART and DENIED IN PART**, and (2) Tarun Surti's Motion for Summary Judgment (ECF No. 191) is **GRANTED IN PART and DENIED IN PART**. Fleet is entitled to summary judgment on its request for a declaration that its mud flap, the AeroFlap, does not infringe on Surti's patent, RE '755. Fleet is also entitled to dismissal of Surti's counterclaims for breach of contract and misappropriation of trade secrets. Surti is entitled to the dismissal of Fleet's claims that his patent is invalid."*

Page **1** of **6**

3.  (a) Plaintiff requested that the Court enter a final Judgment in favor of Plaintiff and against Defendant Mudguard on Count III of the complaint, Tortious Interference with Business Relations under Michigan Law.

(b) Defendants request that this Court not to enter Judgment against Defendants on Count III of the complaint.

4.  (a) Plaintiff requested that the Court enter a final Judgment in favor of Plaintiff and against Defendant Surti on Count I of the First Amended Complaint, Declaratory Judgment on Non-Infringement 28 U.S.C. § 2201.

(b) Defendants request this Court to enter a final Judgment in favor of Plaintiff and against Defendant Surti on Count I of the First Amended Complaint, Declaratory Judgment on Non-Infringement 28 U.S.C. § 2201 without prejudice.

5.  (a) Plaintiff requested that the Court dismiss Count II of the First Amended Complaint, Declaratory Judgment of Invalidity under 35 U.S. Code § 102 and 103 (b), without prejudice in order that Fleet be able to reassert this claim against Defendant Surti if a case or controversy between the parties again arises regarding Defendant Surti's patent.

(b) Defendants request that the Court dismiss Count II of the First Amended Complaint, Declaratory Judgment of Invalidity under 35 U.S. Code § 102 and 103 (b) with prejudice.

6.  (a) Plaintiff requested that the Court enter a final Judgment in favor of Plaintiff and against Defendants Surti and Mudguard on all counts of the Second Amended Counterclaim, (1) Patent Infringement under 35 U.S. Code § 271; (2) Breach of Contract; and (3) Misappropriation of Trade Secrets.

(b) Defendants request this Court to enter a Judgment, without prejudice, in favor of Plaintiff and against Defendants Surti and Mudguard on all counts of the Second

Amended Counterclaim, (1) Patent Infringement under 35 U.S. Code § 271; (2) Breach of Contract; and (3) Misappropriation of Trade Secrets.

7. (a) On June 22, 2017, Plaintiff filed its Motion for Dismissal of Count III as to Defendant Surti Pursuant to Fed. R. Civ. P. 41(a)(2), requesting dismissal of this count without prejudice, ECF No. 243.

(b) Defendant request for Dismissal of Count III as to Defendant Surti Pursuant to Fed. R. Civ. P. 41(a)(2), requesting dismissal of this count with prejudice.

8. (a) Plaintiff is also seeking the amount of damages owed by Defendant Mudguard for its default on Count III of the Complaint, Tortious Interference with Business relations.

(b) Defendant request this Court not to enter any amount of damages owned by Defendant Mudguard for Tortious Interference with business relations for the reasons stated in item 9-13.

9. The Defendants, as a holder of valid U.S. Patent, were under an obligation to send out a "notice of infringement" if the patentee had good faith belief that Plaintiff's Aero-Flap had used its patented technologies. Such action by patent holder is legally required by the 35 U.S. Code § 287 (b) (5). [1]

10. Defendants' and their patent attorney, Mr. Ted Wright, had gathered sufficient information and had establish a good faith belief to persuade a reasonable person that it is likely that

---

[1] **35 U.S. Code § 287 (b) (5)** *(A) For purposes of this subsection, notice of infringement means actual knowledge, or receipt by a person of a written notification, or a combination thereof, of <u>information sufficient to persuade a reasonable person that it is likely that a product was made by a process</u> patented in the United States. (B) A written notification from the patent holder charging a person with infringement shall specify the patented process alleged to have been used and the reasons for a good faith belief that such process was used. The patent holder shall include in the notification such information as is reasonably necessary to explain fairly the patent holder's belief, except that the patent holder is not required to disclose any trade secret information.*

Plaintiff's Aero-Flap mud flap was made by using technologies patented in the United States by Mr. Surti.

    a. Defendants were required by the Patent Laws 35 US Code § 287 (a)[2] to use every available options to establish a proof that the infringers were notified of the infringement and continued to infringe thereafter of their patent.

    b. Defendants' V-Flap mud flap had proper marking on its injection molded mud flap that read, "patent pending" and/or "Patent 8,146,949 and/or RE 44,755.

    c. Defendants' attorney, Mr. Ted Wright, did send "notice of infringement"[3] to the Plaintiff's attorney, Mr. McGarry.

    d. Defendants did sent out "notice of infringement" to its customer list.

    e. Defendants did post on its website and its social media the "notice of infringement".

    f. Mudguard did not sent out "notice of infringement" to Plaintiff's customers[4] as claimed by the Plaintiff in their tortious interference claim.

11. Plaintiff's damage expert, Mr. Philip W Kline, has identified one customer, Great Dane Trailers,[5] while submitting his calculation of lost profit due to a tortious interference by the Defendants.

---

[2] **35 US Code § 287 (a)** *"Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them, or importing any patented article into the United States, may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent, or by fixing thereon the word "patent" or the abbreviation "pat." together with an address of a <u>posting on the Internet</u>, accessible to the public without charge for accessing the address, that associates the patented article with the number of the patent, or when, from the character of the article, this can not be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice. In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice".*

[3] ECF-1-3, page ID 62, line 3-12 and page ID 64, image

[4] Mudguard did not have access to Plaintiff customer list.

[5] ECF 239, Page 13, line 2

    a. In reality, it was Plaintiff who had interfered with Defendants customer[6] Great Dane Trailers[7] and enticed their business by offering them "an indemnity agreement".

    b. Aero-Flap mud flap is the first and the <u>only injection molded aerodynamic mud flap</u> Plaintiff makes and sells. Therefore, prior to Aero-Flap mud flap, they never had any existing customers who purchased aerodynamic mud flaps from them.

12. If calculated properly Plaintiff's expert, Philip W Kline, is claiming that Plaintiff have incurred loss profit of 49.16%[8] from the sale of its Aero-Flap mud flap due to the Defendants' tortious interference.

13. The Court must pay serious attention to the "Lost Profit" calculations submitted by the Plaintiff. [9] There calculations shows the real reason why Plaintiff have used Surti's '755 patent technologies[10].

14. Defendant did what they had to do to protect their patent according to guideline provided by the Patent Laws. Therefore their action should not be constructed as Tortious Interference.

15. Pursuant to Local Rule 7.1(d), Defendants emailed to Plaintiff's attorney Mr. Williams on June 30, 2107, to determine if he would oppose/support this motion; Plaintiff has responded to the Defendant. *See, Exhibit B.*

---

[6] Defendants had provided list of its customers that included the name of Great Dane Trailers to Plaintiff when they entered into the "exclusive distribution agreement".

[7] See exhibit "A"- a letter from Rod Miller of Great Dane Trailers

[8] Lost sales $366,001, Total incremental expenses $186,057 and Lost (net) Profit from sales $179,944. Lost profit divided by sales should provide the percentage profit. In this case $179,944/$366,001=49.16%

[9] ECF-239 Page 12, Figure 9

[10] The Court has erred in defining the word "Vane" in its opinion and order ECF-236 that Defendants reserve the rights to appeal.

Dated: June 30, 2017

Respectfully submitted,

By:_____

Tarun N. Surti, individually, and
As Officer of Mudguard Tech, LLC
5928 Westheimer Drive
Brentwood TN 37027
Tel: 615-812-6164
Email: vflaps@gmail.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies a copy of *Defendants' Motion to deny Plaintiff's Motion*

*Requesting Entry of Judgment Pursuant to Fed. R. Civ. P. 54.* was served via email on June 30,

2017, and via first-class U.S. mail, postage pre-paid, on June 30, 2017, to the following:


G. Thomas Williams (P53734)
**McGarry Bair PC**
45 Ottawa Ave. SW, Suite 700
Grand Rapids, MI  49503
Email: gtw@mcgarrybair.com


Respectfully submitted,

Dated: June 30, 2017

By:_____

Tarun N. Surti, individually, and
As Officer of Mudguard Tech, LLC
5928 Westheimer Drive
Brentwood TN 37027
Tel: 615-812-6164
Email: vflaps@gmail.com

Page **6** of **6**

PRIORITY MAIL
POSTAGE REQUIRED

PRESS FIRMLY TO SEAL

**PRIORITY★ MAIL**

★ UNITED STATES
POSTAL SERVICE ®

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

FROM:
T. Surf
5428 Weatherman Dr
Brentwood TN 37027

TO: Court clerk office
410 W. Michigan Ave
Kalamazoo MI 49007

FOR DOMESTIC AND INTERNATIONAL USE

Label 228, July 2013

Retail

★ UNITED STATES
POSTAL SERVICE.

**US POSTAGE PAID**
**$6.65**

Origin: 37211
Destination: 49007
0 Lb 3.40 Oz
Jun 30, 17
4761510299-03

1006

**PRIORITY MAIL ®2-Day**  C033

Expected Delivery Day: 07/03/2017

**USPS TRACKING NUMBER**

9505 5154 1831 7181 1096 35

# EXHIBIT A

# FILED UNDER SEAL

CONFIDENTIAL

**TARUN N SURTI**

| | |
|---|---|
| **From:** | Miller, Rod (GDLP) ███████████████████ |
| **Sent:** | Tuesday, March 19, 2013 9:45 AM |
| **To:** | vflaps@gmail.com |
| **Subject:** | Question about V-Flaps |

Hi,

We will be purchasing and installing your V-Flap mud flaps on trailers..

We found the following posted on the Internet. Is it true? We called Fleet Engineers Inc. said they knew nothing about it.

# Fleet Engineers, Mudguard reach distribution agreement

http://www.fleetequipmentmag.com/Products/77932/fleet_engineers_mudguard_reach_distribution_agreement.aspx

Thanks,

Rod Miller
Engineering Manager
Great Dane Trailers
████████████
████████████████

1
CONFIDENTIAL

## TARUN N SURTI

| | |
|---|---|
| **From:** | Kraemer, Kirsten J. (GDLP) ███████████████████ |
| **Sent:** | Monday, December 13, 2010 9:52 AM |
| **To:** | 'vflaps@████████' |
| **Subject:** | Purchase Orders |

Good Morning,

This is Kirsten with Great Dane Trailers PDC in Terre Haute, IN. We have recently sent two purchase orders to you that have not been confirmed. They are P.O. 1508689-000 OP and 1508712-000 OP. Both would have been emailed to you on Friday the 3rd. Please let me they were received or it you need me to email them to you again. Also, I am not sure anyone mentioned this to you but we are not receiving after this Friday because we will be closed for inventory and the holidays. Please wait to ship these parts until the New Year.

Thanks,
Kirsten Kraemer
Purchasing Clerk
Great Dane Trailers
███████████████
███████████

2

CONFIDENTIAL

# EXHIBIT-B

## TARUN N SURTI

| | |
|---|---|
| **From:** | G. Thomas Williams <gtw@mcgarrybair.com> |
| **Sent:** | Friday, June 30, 2017 3:34 PM |
| **To:** | Vflaps@gmail.com; Andrea R. Jacobson |
| **Subject:** | RE: Fleet Engineers, Inc. v Mudguard |

Mr. Surti:

Thank you for your message.  We will look forward to reading your response to our motion.  If there are any details you would like to discuss, please do not hesitate to reply to this email or to give me a call.

- Tom Williams

G. Thomas Williams | Attorney | McGarry Bair PC
Direct 616 742 3514 | gtw@mcgarrybair.com

**From:** TARUN N SURTI [mailto:vflaps@gmail.com]
**Sent:** Friday, June 30, 2017 4:23 PM
**To:** Andrea R. Jacobson <arj@mcgarrybair.com>
**Cc:** G. Thomas Williams <gtw@mcgarrybair.com>
**Subject:** RE: Fleet Engineers, Inc. v Mudguard

Mr. Williams,

I plan to file my answer denying part of your motion, especially on Count II & III.
Please let me know your thought.

TARUN N. SURTI
615-281-9850
www.VFLAP.com
*Mudguard Technologies, LLC*
*5928 Westheimer Drive*
*Brentwood TN 37027*

**100% Woman-Owned Minority Business Enterprise (WME and MBE)**
NOTE: This e-mail message, and any attachments, is intended only for the named recipient(s) above and may contain information that is privileged, confidential and/or exempt from disclosure under applicable law. If you are not the intended recipient, please do not read this message or any attachments, and please do not distribute or act in reliance on this message. If you have received this message in error, or are not the named recipient(s), please immediately notify the sender and promptly delete this e-mail message and any attachments from your computer. You are hereby notified, if you are not the intended recipient of this email,  that without our written approval disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited. Thank you.

**From:** Andrea R. Jacobson [mailto:arj@mcgarrybair.com]
**Sent:** Tuesday, June 27, 2017 8:36 PM

1

**To:** Vflaps@gmail.com
**Cc:** G. Thomas Williams <gtw@mcgarrybair.com>
**Subject:** Fleet Engineers, Inc. v Mudguard

Mr. Surti,

Please see the attached which was filed today by Fleet. Please let us know if you have any questions

Thank you,
Andrea

Andrea R. Jacobson | Legal Assistant | McGarry Bair PC
Direct (616) 742-3538 | arj@mcgarrybair.com

2

# EXHIBIT-4

# AGREEMENT

This Agreement is effective as of the date set forth in Section III below, between Fleet Engineers Incorporated (Fleet), having an address of 1800 East Keating Avenue, Muskegon, MI 49442, and Great Dane Limited Partnership (GDLP), having an address of 222 N. LaSalle Street, Suite 1000, Chicago, IL 60601, which may be referenced collectively as the "Parties" herein and individually as "Party."

WHEREAS, Fleet is in the business of making and selling products for trucks and trailers, including mudflaps sold under the mark AEROFLAP,

WHEREAS, GDLP is in the business of making and selling trailers,

WHEREAS, Mudguard Technologies, LLC has made assertions to Fleet and to GDLP customers that Fleet's AEROFLAP mudflap infringes U.S. Patent 8,146,949, and whereas Fleet has initiated an action for declaratory judgment, Fleet Engineers, Inc. v. Mudguard Technologies, LLC, et al., Case No. 1:12-cv-01143-PLM (W.D. Michigan), for declaration that the '949 patent is not infringed by Fleet's AEROFLAP mudflap and/or that the '949 patent is invalid, and

WHEREAS, GDLP has purchased AEROFLAP mudflaps from Fleet for installation on customer trailers and wishes to continue to pursue the opportunity to purchase and/or install such mudflaps with assurance that Fleet will indemnify GDLP for associated costs in the event Mudguard Technologies asserts claims of patent infringement against GDLP related to Fleet mudflaps,

NOW, THEREFORE, the Parties enter into the present Agreement as set forth herein.

I.  Definitions

    1.01.  "Affiliate" of GDLP or Fleet, as the case may be, means any individual, business entity, group or partnership that, as of or following the effective date of this Agreement, directly or indirectly controls, is directly or indirectly controlled by or is directly or indirectly under common control with such Party, such "control" (or "controlling," "controlled by," and "under common control with") meaning the possession, direct or indirect, of the power to direct or cause the direction of the management and policies or otherwise of such Party or entity, as the case may be, whether through the ownership of voting securities, by contract or otherwise.

II.  Indemnification

    2.01.  Fleet will, upon demand, indemnify, defend, save and hold harmless GDLP and its successors or assigns, directors, officers, employees, agents, Affiliates, and customers (each, an "Indemnified Party") from and against

1

ATTORNEY EYES ONLY

FLEET000963

any and all liabilities, costs, claims, damages, losses, fees or expenses (including, but not limited to, reasonable attorneys' fees), demands, judgments, and awards related to, or arising out of, or incurred in connection with any lawsuit or proceeding filed against an Indemnified Party by Mudguard Technologies, or other party having an interest in the '949 patent, alleging that mudflaps provided directly or indirectly to GDLP by Fleet infringe one or more claims of the '949 patent.

2.02. The indemnification obligation of Section 2.01 will apply only if GDLP promptly notifies Fleet in writing of any such lawsuit and/or claim, and Fleet is given control of the defense of such lawsuit and claim with counsel of its choice.

2.03. Notwithstanding Section 2.02, or anything otherwise in this Agreement, in the event of a lawsuit or claim subject to the indemnification of Section 2.01 of this Agreement, GDLP may retain counsel of its own choosing and at its own expense to review the lawsuit, claims, and defense thereof, and Fleet and its attorneys will reasonably cooperate with such attorneys of GDLP to that extent and in that regard, provided that GDLP's counsel execute a mutually satisfactory joint defense agreement to preserve confidentiality and privilege. At any time, and at its sole discretion, GDLP may elect to control the defense of a claim and/or lawsuit (the "Elected Claim") made against GDLP that is subject to an indemnification under Section 2.01. In the event GDLP so elects, Fleet's indemnification obligation under Section 2.01 of this Agreement will end only with regard to the Elected Claim, although Fleet will remain obligated for costs, expenses, and fees incurred in the defense of the Elected Claim prior to such election by GDLP as required under Section 2.01.

2.04. Notwithstanding Section 2.02, or anything otherwise in this Agreement, Fleet will not enter into any settlement of a claim or lawsuit subject to an indemnification obligation under Section 2.01 of this Agreement without the Indemnified Party's prior written approval, which will not be unreasonably withheld.

III. Term

The term of this Agreement will commence on the last date a Party executes this Agreement and will continue until a period ending six years from expiration of the '949 patent.

IV. Miscellaneous

4.01. By entering this Agreement, Fleet represents and warrants that it has taken, and will in the future take, no action in denigration of the rights and obligations conveyed and arising in this Agreement.

2

ATTORNEY EYES ONLY

FLEET000964

4.02. Each Party represents and warrants that it is authorized to enter into this Agreement and that the person executing this Agreement on its behalf has the capacity, full power, and authority to bind it to each and every provision of this Agreement.

4.03. The Parties may not assign this Agreement, except that a Party may assign this Agreement to any third party that subsequently acquires all or substantially all of the Party's business associated with this Agreement, said acquisition to be made subject to the rights and obligations of this Agreement. The Parties agree that a corporate reorganization, or the trading or transfer of ownership interests, including a majority or controlling interest, in a Party is not considered an assignment of this Agreement.

4.04. If any provision of this Agreement is determined to be unlawful or otherwise unenforceable, the remaining provisions will nevertheless continue in full force and effect unless to do so would materially alter the bargained for consideration of the Parties in entering into this Agreement.

4.05. This Agreement will be construed to have been drafted by all Parties to it, and therefore the rule of construing ambiguities against the drafter will have no force and effect. Ambiguities or uncertainties in this Agreement will not be interpreted or construed against any Party to this Agreement. Both Parties understand that they have the opportunity to consult with counsel regarding this Agreement.

4.06. Nothing in this Agreement is intended or will be deemed to obligate GDLP to purchase or install Fleet mudflaps or to obligate Fleet or GDLP to otherwise conduct any transaction or to otherwise enter into or maintain any agreement or obligation to purchase, sell, or distribute mudflaps.

4.07. This Agreement will be construed according to the laws of the state of Georgia, notwithstanding any choice-of-law principle that might dictate a different governing law.

4.08. Nothing in this Agreement is intended or will be deemed to constitute a partnership, agency, employer-employee, or joint venture relationship between the Parties. Neither Party will incur any debts or make any commitments on behalf of the other. There is no fiduciary or special relationship of any kind between the Parties to this Agreement. Each Party expressly disclaims any reliance on any act, word, or deed of the other Party in entering to this Agreement.

4.09. This Agreement constitutes the entire agreement between the Parties and supersedes any and all prior written or oral agreements and understandings between the Parties with respect to the subject matter herein. This agreement

3

ATTORNEY EYES ONLY
FLEET000965

may not be amended except by a written agreement executed by the Parties hereto.

4.10. This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Agreement and all of which, when taken together, will be deemed to be an original copy of this Agreement. Facsimile or other electronic execution and delivery of this Agreement is legal, valid and binding execution and delivery for all purposes. The facsimile or electronic signature will be valid and acceptable for all purposes as if it were an original.

IN WITNESS WHEREOF, the Parties have executed and delivered this agreement as of the dates set forth below.

FLEET ENGINEERS INCORPORATED

By: _Wesley K. Eklund_

Name: _Wesley K. Eklund_

Title: _President_

Date: _January 2, 2013_

GREAT DANE LTD PARTNERSHIP

By: _____

Name: _____

Title: _____

Date: _____

4

ATTORNEY EYES ONLY

FLEET000966

may not be amended except by a written agreement executed by the Parties hereto.

4.10. This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Agreement and all of which, when taken together, will be deemed to be an original copy of this Agreement. Facsimile or other electronic execution and delivery of this Agreement is legal, valid and binding execution and delivery for all purposes. The facsimile or electronic signature will be valid and acceptable for all purposes as if it were an original.

IN WITNESS WHEREOF, the Parties have executed and delivered this agreement as of the dates set forth below.

FLEET ENGINEERS INCORPORATED

By: _____

Name: _____

Title: _____

Date: _____

GREAT DANE LTD PARTNERSHIP

By: _____

Name: _DAVID M. RUBIN_

Title: _VICE PRESIDENT_

Date: _11/19/2012_

4

# EXHIBIT-5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FLEET ENGINEERS, INC.,                      )
                         Plaintiff,          )
                                             )          No. 1:12-cv-1143
-v-                                          )
                                             )          Honorable Paul L. Maloney
MUDGUARD TECHNOLOGIES, LLC and               )
TARUN SURTI,                                 )
                         Defendants.         )
_____    )

### ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS, GRANTING IN PART PLAINTIFF'S MOTION FOR ENTRY OF JUDGMENT AND DENYING DEFENDANT'S MOTION FOR ORDER

Three motions are pending in this lawsuit.  Plaintiff Fleet Engineers filed a motion for voluntary dismissal of count 3 against Defendant Tarun Surti.  (ECF No. 243.)  Fleet also filed a motion for entry of judgment.  (ECF No. 248.)  Finally, Defendant Surti filed a motion requesting the Court issue an order prohibiting Plaintiff from making misleading public statements.  (ECF No. 254.)

I.

This lawsuit was filed after the business arrangement between two parties soured. Surti owns a patent for a mudflap.  Surti is an officer of Defendant Mudguard Technologies. Mudguard entered into a distribution agreement with Fleet to distribute Surti's mudflap.  The agreement fell apart, and the parties went their separate ways.  Subsequently, Fleet began marketing its own mudflap.  Fleet then filed this lawsuit seeking a declaration that its mudflap did not infringe on Surti's patent, and that Surti's patent was invalid.  Fleet also alleged that Defendants had interfered with various business relationships.  Defendants filed

counterclaims for patent infringement, breach of contract, and misappropriate of trade secrets.

Because this lawsuit involved patent claims, the parties submitted claim construction briefs.  A hearing was held.  And, the Court issued a claim construction opinion.  (ECF No. 60.)

Soon thereafter, the Court entered default against Defendant Mudguard.  (ECF No. 70.)  As a corporation, Mudguard must be represented by counsel.  Mudguard's attorney requested leave to withdraw, which this Court granted.  Mudguard was warned several times that it needed to have new counsel file an appearance and the deadline for the appearance was extended more than once before default entered.

Fleet sought and was granted leave to file an amended complaint, which is the controlling pleading.  (ECF No. 99.)  Fleet did not add any additional claims.  Surti filed amended counterclaims, but did not add any new claims.  (ECF No. 115.)

On June 8, 2017, this Court resolved cross motions for summary judgment, granting in part Fleet's motion and granting in part Surti's motion.  (ECF No. 236.)  Fleet prevailed on its request for a declaration that its mudflap did not infringe on Surti's patent and also prevailed on Surti's counterclaims for breach of contract and misappropriation of trade secrets.  (*Id.* PageID.2838.)  Surti prevailed against Fleet's claim that Surti's patent was invalid. (*Id.*)

The only remaining claim is Fleet's tortious interference with a business relationship claim against Surti.  Although that claim was also brought against Mudguard, it has been defaulted.

## II.

### A.  Plaintiff Fleet's Motion to Dismiss Count 3 (ECF No. 243)

Fleet requests the Court dismiss, without prejudice, its tortious interference claim against Surti.  Fleet relies on Rule 41(a)(2).  Surti opposes the dismissal without prejudice.  (ECF No. 252 ¶ 5 PageID.3013.)

The decision to permit voluntary dismissal under Rule 41(a)(2) falls within the discretion of the trial court.  *Bridgeport Music, Inc. v. Universal-MCA Music Publ'g, Inc.*, 583 F.3d 948, 953 (6th Cir. 2009).  Rule 41(a)(2) protects the non-moving party, the defendant, from unfair treatment.  *Id.*  A dismissal without prejudice should not be granted if the defendant would suffer from "plain legal prejudice," "as opposed to facing the mere prospect of a second lawsuit." *Id.* (citation omitted).  Courts may take into consideration the defendant's efforts and expenses in preparing for trial, excessive delay and lack of diligence on the part of the plaintiff, failure to explain the need for the dismissal, and whether a motion for summary judgment has been filed by the defendant.  *Id.*; *Malibu Media, LLC v. Ricupero*, 705 F. App'x 402, 407 (6th Cir. 2017) (same).

The Court will grant Fleet's motion to voluntarily dismiss the tortious interference claim against Surti, without prejudice and without costs to either party.  All of the factors identified in *Bridgeport Music* and *Malibu Media* weigh in favor of granting the motion.  Surti asserted only a perfunctory response.  Surti did not appear for the final pretrial conference, which was held after this motion was filed.  (ECF No. 246.)  Because he failed to appear, the Court cancelled the trial, which was scheduled to begin approximately two

3

weeks later.  The record shows that Fleet has diligently pursued its claims.  Fleet has articulated a sufficient reason for the dismissal.  There are no pending dispositive motions.

Therefore, Fleet Engineer's motion for voluntary dismissal of Count 3 against Surti (ECF No. 243) is **GRANTED.**    Fleet Engineer's claim for tortious interference against Defendant Tarun Surti is **DISMISSED WITHOUT PREJUDICE.**

### B.  Plaintiff Fleet's Motion for Entry of Judgment (ECF No. 248)

Relying on Rule 54 of the Federal Rules of Civil Procedure, Fleet requests the Court (1) enter final judgment against Mudguard on count 3 (tortious interference) and against Surti on count 1 (non-infringement); (2) enter final judgment against Surti and Mudguard on all of the counterclaims (patent infringement, breach of contract and misappropriation of trade secrets); (3) enter a money judgment against Mudguard on count 3 (tortious interference) for $195,523.58; and (4) dismiss, without prejudice, count 2 (patent invalidity) against Surti. Surti opposes all of these requests.  (ECF No. 252.)

Rule 54(b) is "designed to facilitate the entry of judgment on one or more claims, or as to one or more parties, in a multi-claim/multi-party action." *Corrosioneering, Inc. v Thyssen Envt'l Sys., Inc.*, 807 F.2d1279, 1282 (6th Cir. 1986).  Under Rule 54, a district court exercises its discretion to release for appeal, final decisions on one or more, but fewer than all, of the claims.  *Id.* (citation omitted).

As to Defendant Tarun Surti, the Court agrees with Fleet that some of the relief it seeks is appropriate to resolve through a final order under Rule 54(b), for the claims and counterclaims that were resolved through the cross motions for summary judgment. Consistent with the Opinion and Order granting in part both parties' motions for summary

judgment (ECF No. 236), the Court will (1) declare that Fleet's mudflap does not violate Surti's patent (count 1); and (2) dismiss all three counterclaims brought by Surti (infringement, breach of contract, and misappropriation of trade secrets).

Fleet's request that its Count 2 be dismissed without prejudice will be denied. That claim was resolved against Fleet as part of the cross motions for summary judgment. The Court found, as a matter of law, that the patent was not invalid. In the final order, the Court will dismiss Fleet's patent invalidity claim against Surti, but the claim will be dismissed with prejudice.

As to Defendant Mudguard, the Court agrees with Fleet that the counterclaims should be dismissed with prejudice. Default was entered against Mudguard after it failed to have an attorney file an appearance and after several warnings from the Court. Because Mudguard failed to prosecute its counterclaims, dismissal of those claims with prejudice is appropriate under Rule 41(b). *See Link v. Wabash R.R. Co.*, 370 U.S. 626, 629-33 (1962).

The Court will also grant Fleet's request for a money judgment against Mudguard for its tortious interference with a business relationship claim. The portion of Fleet's motion is appropriate under Rule 55(b)(2). Mudguard made an appearance, and was later defaulted. Fleet has supported its request for damages with an expert report from Philip Kline. No counterevidence has been presented. Surti submitted his own report on Mudguard's behalf. Fleet filed a *Daubert* motion to strike Surti's report, which the Court granted (ECF No. 232). In his response to this motion, Surti identifies a number of alleged flaws with Mr. Kline's assumptions and calculations. As this Court has informed Surti on multiple occasions, corporations must be represented by counsel. Surti cannot litigate on Mudguard's behalf.

5

Kline's report, and Fleet's request for a money judgment, have been filed for months, and no attorney has appeared on Mudguard's behalf to respond.  A hearing on the matter would be a waste of time and resources.  Fleet Engineers is entitled to a judgement against Mudguard Technologies, LLC on the tortious interference with a business relationship for $195,523.58.

Accordingly, Fleet Engineer's motion for entry of judgment (ECF No. 248) is **GRANTED IN PART.**  The Court **DECLARES** that Fleet's AeroFlap mudflap, as presented to this Court, does not infringe on Tarun Surti's 8,146,949 patent for a mudflap. The three counterclaims brought by Surti and Mudguard against Fleet are **DISMISSED WITH PREJUDICE.**  Fleet Engineer's Count 2, its claim for patent invalidity against Surti's patent is **DISMISSED WITH PREJUDICE.**  Fleet Engineer's Count 3, its tortious interference claim against Defendant Mudguard Technologies is **GRANTED** and the Court **AWARDS A MONEY JUDGMENT** in Fleet's favor against Mudguard for $195,523.58.

6

C.  Defendant Surti's Motion for a Court Order (ECF No. 254)

Surti requests the Court issue an order stopping Fleet from making misleading public announcements concerning the Court's earlier Opinion and Order resolving the cross motions for summary judgment.

Surti is not entitled to the relief he seeks.  The Court has reviewed the allegedly misleading public announcement, which were attached to Surti's motion.  It is not clear from Surti's motion what portion of the announcement he believes is misleading.  In addition, Surti has not identified any authority under which the Court might grant him the relief he seeks.

For these reasons, Surti's motion for a court order (ECF No. 254) is **DENIED.**

**IT IS SO ORDERED.**

Date:  March 30, 2018                                          /s/ Paul L. Maloney
                                                               Paul L. Maloney
                                                               United States District Judge

7